IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YAMILIE RODRIGUEZ MERCADO,

     Plaintiff,

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

CIVIL NO. 14-1428 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Yamilie Rodríguez Mercado ("Plaintiff") filed this action to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for disability benefits. (Docket No. 2).[1]  On June 6, 2014, the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment, having found that Plaintiff implicitly consented to proceed before a United States Magistrate Judge. (Docket No. 10).[2]  On February 3, 2015, the Commissioner answered the Complaint and filed a copy of the administrative record shortly thereafter.   (Docket No. 19).   On August 14, 2015, Plaintiff filed her memorandum of law (Docket No. 27) and

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner.   "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing".  Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases.   Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

on September 10, 2015, the Commissioner filed her memorandum of law. (Docket No. 28).   After careful review, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former general office clerk, filed an application for disability benefits on March 11, 2010, with an alleged onset date of disability of January 28, 2010.   The application was initially denied, as was the reconsideration.   (Tr. pp. 125-128 and 130-132).   Plaintiff then requested an administrative hearing, which was held on December 19, 2012, where Plaintiff was present with counsel and testified regarding her alleged disabilities.   (Tr. pp. 32-83).   On January 10, 2013, the presiding Administrative Law Judge ("ALJ") issued an opinion, finding Plaintiff was not disabled from January 28, 2010 through the last insured date.   (Tr. pp. 18-31).

The ALJ made the following findings of fact in his decision:

1. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013.

2. Plaintiff did not engage in any substantial gainful activity since January 28, 2010, the alleged disability onset date.

3. Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD) and a major depressive disorder.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the record, Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: able to understand, remember and carry out simple and routine tasks; maintain attention and concentration for more than 2-hour periods; interact occasionally with supervisors, co-workers and the public; and adapt to a routine work setting.

6.      Plaintiff was unable to perform any of her past relevant work.

7.      Plaintiff was born on July 22, 1978, and was 31 years old on the alleged disability onset date, which is defined as a younger individual, age 18-49.

8.      Plaintiff had at least a high school education and was able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled" whether or not she had transferable job skills.

10.     Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.[3]

---

[3] The ALJ found at the hearing that Plaintiff could perform jobs as a laundry folder, a bagger and assembler of printing products.

> 11.   Plaintiff was not under a disability, as defined in the Social Security Act, from January 28, 2010 through the date the decision was rendered, January 20, 2013.

After analyzing all the factors, the ALJ opined that Plaintiff had the capacity for light unskilled work, and concluded that Plaintiff was therefore not disabled. (Tr. p. 28). The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 6-10).

Plaintiff objects the ALJ's final decision denying her disability benefits, alleging he failed to adequately assess the severity of her mental condition, and this in turn served to underestimate the effect of the totality of her conditions on her ability to perform basic work related functions.   Therefore, Plaintiff argues the ALJ's decision was not based on substantial evidence.   Additionally, Plaintiff alleges the ALJ failed to identify a plausible occupation for her, insofar as the jobs he found applicable, that of bagger and folder, were traditionally extended to male teenagers and/or young students.   The Commissioner, on the other hand, asserts there is substantial evidence to support the ALJ's conclusion, and that the many inconsistencies in Plaintiff's statements regarding her daily activities and her work history undermined her credibility during the hearing.   Regarding the ALJ's determination of the possible jobs available, the Commissioner posits that he need only establish they are available in the national economy and Plaintiff is able to perform them, not whether the jobs were in fact offered to her.

## LEGAL ANALYSIS

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act.   See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987).   It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).   A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.   20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R.   §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).   At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b).   If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a

medically severe impairment or combination of impairments. See §§ 404.1520(c).   If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1.   If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.   If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past.   If the claimant is able to perform his/her previous work, he/she is not disabled.   §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.   The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f).

In the case at bar, at steps 4 and 5, the ALJ determined that Plaintiff was unable to return to her past work, yet she was able to perform other jobs that were available in the national economy.

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence.   See Manso-Pizarro v. Secretary of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999).   Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion".   Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938).   The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error.   See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Secretary of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

Plaintiff's main argument is that the ALJ failed to adequately assess all the medical evidence when he failed to consider Plaintiff's overall mental picture and symptoms, which she alleges demonstrate she is disabled.   It is important to note that courts must give deference to the ALJ's interpretation of the medical record and, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them.   See Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of

disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Secretary of Health and Human Servs., 647 F.2d at 222.

In analyzing Plaintiff's claim, the ALJ performed a two-step process, to wit, first he determined what impairment she suffered from, which can be shown by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce Plaintiff's symptoms.   Once said impairment was shown, the ALJ then evaluated the intensity and limiting effect of those symptoms and determined the extent in which they limited Plaintiff's functional capacity to work, and in so doing, he examined the objective medical evidence as well as the credibility of the witnesses. Plaintiff's main claim is her mental condition, as she has not brought forth evidence of any physical impairments which affect her ability to perform gainful activity.   As the ALJ well found, Plaintiff suffers from post-traumatic stress disorder and a major depressive disorder, which began as a result of her witnessing her brother's murder in 2005 and because she was a victim of spousal abuse.

The ALJ made a thorough examination of Plaintiff's record beginning in 2005, after her brother's death, which contained a history of mental symptoms which could have contributed to the award of benefits, including a Court ordered involuntary admission to a psychiatric hospital in 2007.   (Tr. p. 206).   However, these events fall outside the alleged onset date of January 28, 2010, and therefore, the Court did not consider them. Instead, the Court focuses on the relevant record from the alleged onset date, that is, from January 28, 2010, forward.

The record shows Plaintiff started seeing Dr. Luis Rodríguez Vecchini ("Dr. Rodríguez") in June 2010. A year before that, Plaintiff's treatment had leveled and she was given a GAF score of 60 out of 100[4], which showed moderate difficulty in several areas, but not complete impediments. Although Dr. Rodríguez initially found Plaintiff anxious, irritable and trembling, with continued visits he indicated she was "stable" with treatment and medication. (Tr. pp. 171-172). Plaintiff's visits to Dr. Rodríguez were spotty and infrequent, approximately once a month. Id.

An evaluation performed by consulting psychiatrist Dr. Luis Carlos Rojas Ruiz ("Dr. Rojas") on August 20, 2010 found Plaintiff restless, anxious, sad, depressed, and with diminished concentration, but with adequate visual contact, cooperative, speaking in complete sentences, without thought blocks, with logical conversation, with organized and coherent flow of ideas, without delusions, and with adequate social judgment. (Tr. pp. 178-180). Dr. Rojas opined Plaintiff was capable of managing her own funds.

A Psychiatric Review Technique performed on October 13, 2010 revealed moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (Tr. p. 414). This was in line with Dr. Rojas' findings, which showed moderate, not severe limitations in certain areas. This demonstrated some difficulties in specific areas, but not severe enough to be disabling. A Residual Functional Capacity Assessment

---

[4] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score 51 - 60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

performed on the same date supports this conclusion. (Tr. pp. 418-421).   It revealed Plaintiff was moderately limited in 11 out of 20 items, and not significantly limited in the remaining 9 items.   Id.   Plaintiff was not found markedly limited in any area.   Id.

Further visits to Pavía Hospital during the relevant time period of November and December 2012, revealed Plaintiff's condition had deteriorated without her Xanax prescription, which is in accord with Dr. Rodriguez' opinion that her condition was manageable and stable with medication.   (Tr. p. 212).   Plaintiff was treated and sent home in November with a Xanax prescription and in December without any medications. (Tr. pp. 212-215).   The fact that Plaintiff was found well enough to be sent home and not hospitalized is indicative that her condition was not severe.

These findings of the record were buttressed by the testimony of Dr. June Mary Jiménez ("Dr. Jiménez") at the hearing.   Dr. Jiménez noted the gaps in treatment and the instances of non-compliance with the treatment by Plaintiff, and how Plaintiff herself stated that Xanax was helpful for her condition. (Tr. p. 23).   Dr. Jiménez opined the record showed that Plaintiff had not exhibited consistent and persistent severe mental symptoms and could therefore perform simple tasks with occasional interaction with the public and co-workers.   Id.

Thus, despite the allegations of the severity of Plaintiff's symptoms, the record has more than amply evidenced that all treatment provided to Plaintiff was outpatient, sporadic and controllable with medications.   No hospitalizations of any duration whatsoever were reported during the relevant period.

Yamilie Rodríguez Mercado v. Acting Commissioner of S.S.
Opinion and Order
Civil No. 14-1428 (CVR)
Page No. 11

Finally, it is worth noting the ALJ had the opportunity to personally assess Plaintiff's demeanor at the hearing, thus allowing him an important opportunity to assess her credibility regarding her condition.   The burden is on Plaintiff to prove her disability, and she must do so by providing the ALJ with all the necessary tools (including signs, symptoms, findings, tests and personal testimony) to do so.   The more information the ALJ has, the better equipped he is to determine the issues before him.

The ALJ noted Plaintiff performed certain household chores, went to the park, sometimes to church, and took medication without supervision.   (Tr. pp. 24-25).   While Plaintiff is correct in stating that this alone is not indicative of the fact that she can perform gainful activity outside of a more controlled environment, these findings, when viewed together with her medical history, lend support to the ALJ's conclusion that she was not disabled.

The ALJ also noted that Plaintiff was vague in her testimony about when she stopped working and regarding her daily activities, which was in direct contrast to the information she herself provided to the Social Security Administration in writing, as part of her disability benefits application.   It has always been the province the ALJ and not this Court to assess issues of credibility.   See Valiquette v. Astrue, 498 F. Supp. 2d 424, 430-31 (D. Mass. 2007) ("[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." (*quoting* Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).   The ALJ was in the unique position to observe Plaintiff's demeanor and answers and come to his own conclusions regarding her testimony.

In short, the ALJ found substantial evidence to sustain his conclusion of moderate restrictions for the applicable time period.   The Court does find error in the ALJ's conclusion.

As a second claim of error, Plaintiff posits that the Vocational Expert ". . . failed to identify a plausible occupation in which claimant could make a successful adjustment in the variable jobs in Puerto Rico because occupations of folder ad (sic) bagger are traditionally extended to male teenagers and/or university students in their twenties." (Docket No. 27, p. 4, ¶ 21).

The regulations, however, make no mention of the fact that job actually be available or offered to a claimant.   The relevant section states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, **regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work**. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. (Emphasis added).
> 42 U.S.C.A. § 423 (West).

It is clear that all the law requires is availability in substantial numbers in the national economy.   It specifically precludes an actual vacancy or that the job be offered to Plaintiff.   Therefore, Plaintiff's contention that the ALJ failed to identify a plausible

occupation for her because the potential jobs presented were traditionally extended only to younger male teenagers is irrelevant to her disability determination.

It has been well established that, although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. at 401. Where the facts permit diverse inferences, we will affirm the Secretary even if we might have reached a different result. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Secretary of Health & Human Servs, 654 F.2d at 128.

In view of the above, the Court finds the decision of the Commissioner is supported by substantial evidence in the record as a whole, insofar as Plaintiff's condition did not preclude performance of work dealing with simple tasks and unskilled work, and where she was qualified to perform other jobs available in the national economy.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds there is substantial evidence on the record in support of the Commissioner's decision. As such, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

Yamilie Rodríguez Mercado v. Acting Commissioner of S.S.
Opinion and Order
Civil No. 14-1428 (CVR)
Page No. 14

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 11th day of January, 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE